IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| EJC6, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF JOHNS CREEK, GEORGIA, and JOHNS CREEK CITY COUNCIL, by and through its Members, RANDALL JOHNSON, BRAD RAFFENSPERGER, KAREN RICHARDSON, IVAN FIGUEROA, KELLY STEWART, and the Honorable MIKE BODKER,<br><br>Defendants. | CIVIL ACTION<br>FILE NO. 2013-CV-237994 |

**FIRST RESTATED AND AMENDED PETITION FOR DECLARATORY RELIEF**

COMES NOW EJC6, LLC ("EJC6") and hereby files this First Restated and Amended Petition for Declaratory Relief, respectfully showing the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

Plaintiff EJC6 is a Georgia limited liability company registered to transact business in the State of Georgia.

2.

Defendant City of Johns Creek (the "City") is a political subdivision of the State of Georgia and is subject to jurisdiction in this Court.

3.

Defendant Johns Creek City Council (the "Council"), by and through its Council Members and Manor, governs the City. The Council Members are Randall Johnson, Brad

Raffensperger, Karen Richardson, Ivan Figueroa, and Kelly Stewart, along with the Mayor Mike Bodker.

4.

Defendants may be served through the Johns Creek City Attorney, William F. Riley, at 12000 Findley Road, Suite 400, Johns Creek, Georgia 30097.

5.

This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties. Venue is proper in this Court.

## SUMMARY OF BACKGROUND FACTS

6.

EJC6 is the owner of a 6.738 acre +/- parcel of land located on the northeasterly side of Hospital Parkway (the "Property"). EJC6 is the applicant for a change in zoning conditions of the Property.

7.

Prior to EJC6's purchase of the Property, EJC6 conducted certain due diligence, including, but not limited to, reviewing of the Johns Creek Zoning Ordinance, recorded plats, and other recorded documents and instruments.

8.

The Property was originally a portion of a 42.40 acre +/- tract of land (the "Tract").

9.

On March 6, 2002, the Property (as a part of the original 42.40 acre tract of land) was rezoned from C-1 and O-I zoning under the Fulton County Zoning Ordinance to MIX.

10.

The MIX zoning remained in place through the creation of the City.

11.

According to the City's zoning ordinance, "The MIX District is intended to encourage flexible, innovative, and creative concepts in site planning and efficient use of land and to provide a stable multiple use environment compatible with surrounding uses. The MIX District is particularly encouraged in areas designated by the Comprehensive Plan Land Use Map as suitable for commercial (including retail, service commercial and office) uses and in Living-Working corridors."

12.

Additionally, the City's ordinance states: "The MIX District mandates a residential component of single-family dwellings, duplexes, triplexes, quadruplexes, townhouses, multifamily dwellings or any combination thereof..."

13.

The Tract currently consists primarily of office, retail, and restaurant space, but contains no residential component.

14.

The Tract is in violation of the MIX zoning, because it does not contain the mandated residential component.

## EJC6'S APPLICATION

15.

EJC6 desired to develop the Property and construct a building on the Property, consisting of multi-family units, office space, and a restaurant.

16.

EJC6's proposed plans complied with the MIX zone under the Zoning Ordinance, in that it complied with all Development Standards contained in the MIX zone classification.

17.

However, the City requires any change to original site plans to be made by application for rezoning. In fact, EJC6's representatives were instructed by City representatives to file an application to rezone the Property.

18.

Accordingly, EJC6 submitted its application for a change of zoning conditions to the City's Planning and Zoning department on June 4, 2013 (the "Application"). A true and correct copy of EJC6's letter of intent is attached hereto as Exhibit "A."

19.

EJC6's application sought a change in zoning conditions to MIX Classification to allow for the development of a 4/5 story split building containing 250 multifamily units over 1,800 square feet of restaurant space and 3,000 square feet of office space.

20.

EJC6 further sought a Concurrent Variance authorizing the reduction of parking spaces from 500 spaces to 400 spaces.

21.

EJC6's Application was consistent with the City's Comprehensive Land Use Plan (the "Plan"), providing the missing mandatory residential component of the Tract and by responding to market demands for residential space in the immediate surrounding areas.

22.

EJC6's proposed development of the Property would attract mostly childless occupants, given its higher rental cost, design, location, amenities, and sizes of the units.

23.

Those occupants would be attracted to the location because of the nearby employment centers, density of retail, restaurants, and community prestige.

## PROCEEDINGS IN THE CITY

24.

EJC6 sent timely and proper notice to neighboring property owners, as set forth on the spreadsheet attached as Exhibit "B."

25.

The City's Planning Commission Staff recommended Approval with Conditions, limiting the maximum number of residential units to 12 units per acre.

26.

The staff recommended the limitation to 12 units per acre, purportedly due to a limitation of the units made by Fulton County to a maximum of 75 multi-family units.

27.

However, there was no lawful determination or limitation imposed by Fulton County limiting the development to 75 multi-family units.

28.

There are no recorded instruments, covenants, or other documents limiting the density to 75 multi-family units.

29.

Contrary to the staff's conclusions, the MIX District contains no reference to density limitations.[1]

30.

Rather, as set forth above, the MIX District is "encouraged in areas designated by the Comprehensive Plan Land Use Map as suitable for commercial (including retail, service commercial and office) uses and in Living-Working corridors."

31.

The staff also incorrectly assumed that EJC6's proposed development would increase the burden on the local school district, notwithstanding a School Impact Study that reached the opposite conclusion.

32.

Moreover, like the Zoning Ordinance, the Plan contains no residential density restrictions.

33.

On July 30, 2013, a public participation meeting was held on EJC6's Application. No members from the public spoke in opposition to or raised any objection to the Application.

34.

On August 8, 2013, another public hearing was held on EJC6's Application. No members from the public spoke in opposition to or raised any objection to the Application.

35.

---

[1] Conversely, there are density restrictions imposed throughout the Ordinance relating to other forms of development and zoning. For example, the Townhouse Residential District (Section 7.2), expressly establishes maximum density: "Maximum Density: 9 units per gross acre". (See Section 7.2.3(C))

After the public hearings were held, the Planning Commission recommended approval as submitted.

36.

The Planning Commission's conclusion was correct, proper, and lawful, and based on a proper and legal application of the Zoning Ordinance and Plan.

## CITY'S COUNCIL'S DECISION TO DENY THE APPLICATION WAS ARBITRARY AND CAPRICIOUS

37.

On September 23, 2013, the Council considered the Application at a public meeting.

38.

Like the prior hearings, no member from the public spoke in opposition to or otherwise objected to the Application.

39.

Members of the Council expressed, at the meeting on September 23, 2013, that the City should not convert commercially zoned property to residential and the City should encourage more commercial development.

40.

However, the Property was not zoned commercial – it was zoned MIX. Additionally, contrary to the Council's statements, the MIX District mandates a residential component of the development. Moreover, the Tract is currently in violation of the MIX District because it contains no residential component.

41.

As to the purported residential density restrictions, contrary to the Council's position, neither the Zoning Ordinance nor the Plan contains any such density restriction.

42.

Therefore, the Council knew that EJC6's Application is consistent with the MIX zoning of the Property and the Plan, and provided the necessary residential component to the surrounding MIX District.

43.

Notwithstanding the appropriateness of the proposed use, the Council voted to deny the Application.

44.

The Council's decision was arbitrary and capricious, because of, among other things, the City's requirement that EJC6 submit a zoning application (even though EJC6's proposed development was consistent with the MIX zoning).

45.

The Council's decision was arbitrary and capricious, because of, among other things, the City's insistence upon a 75 unit maximum (when the Zoning Ordinance contains no such restriction).

46.

The Council's decision was arbitrary and capricious, because of, among other things, the City's insistence upon commercial use (even though MIX mandates a residential component).

47.

The Council's decision was arbitrary and capricious, because of, among other things, the conceptual site plan is conceptual only, and the City cannot require strict compliance with it.

48.

The Council's decision was arbitrary and capricious, because of, among other things, the City's justification for denying the Application did not bear a substantial relation to the public health, safety, morality or general welfare.

## COUNT I - DECLARATORY JUDGMENT

49.

EJC6 incorporates the foregoing allegations as if set forth verbatim herein.

50.

EJC6's Application to change zoning conditions is consistent with the Zoning Ordinance[2], the Plan, and the character of the surrounding area.

51.

By refusing to grant EJC6's Application, Defendants are denying EJC6 reasonable economic use of the Property.

52.

The current zoning conditions pose a substantial and insurmountable hardship on EJC6 without any public gain.

53.

EJC6's Application would not result in a potential hardship on the public. However, maintaining the current zoning on the Property results in a substantial hardship and detriment to EJC6.

---

[2] However, the Ordinance is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.

54.

EJC6 has suffered a significant detriment which is insubstantially related to the public health, safety, morality and welfare.

55.

The City's actions as described herein are arbitrary, capricious, and have caused substantial detriment to the value of the Property and have caused substantial damage to EJC6.

56.

Insisting upon nonexistent density limitations and maintaining the current zoning conditions are unrelated to the public health, safety, morality, and welfare.

57.

Defendants have not, and cannot, identify a legally justifiable reason for denying the Application.

58.

Defendants' refusal to approve the Application and its insistence upon maintaining nonexistent density restrictions and the current existing and ambiguous zoning conditions are arbitrary and capricious, operate as a substantial detriment to EJC6 and are unconstitutional.

## COUNT II – VIOLATION OF DUE PROCESS / EQUAL PROTECTION (U.S. CONST. AMEND. XIV & 42 U.S.C. § 1983)

59.

EJC6 incorporates the foregoing allegations as if set forth verbatim herein.

60.

Defendants have failed to uniformly and without discrimination enforce the Ordinance.

61.

Defendants have allowed other uses within the Tract to not comply with the Ordinance and not apply with the conceptual site plan.

62.

Defendants' selective, arbitrary, and discriminatory enforcement of the Ordinance and the site plan violates EJC6's constitutional rights to equal protection under the law and violates EJC6's rights to due and lawful process.

## COUNT III - ATTORNEYS' FEES PURSUANT TO O.C.G.A. § 13-6-11.

63.

EJC6 incorporates and restate the allegations contained in the foregoing Paragraphs as if set forth verbatim herein.

64.

The City's conduct as set forth herein has been in bad faith, intentional, and stubbornly litigious. Accordingly, EJC6 is entitled to an award of its attorneys' fees and expenses.

WHEREFORE, the EJC6 prays as follows:

a) This Petition be filed and process issue in accordance with law;

b) The Court enter judgment in favor of EJC6 as requested herein;

c) The Court enter judgment in favor of EJC6 for all costs of court; and

d) The Court order such further relief as warranted by law.

Respectfully submitted this ___7th___ day of March, 2015.

_____
AARON M. KAPPLER
Georgia State Bar No. 272533

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Norcross, Georgia  30092
(770) 925-0111
*Attorneys for Plaintiffs*

*EJC6, LLC v. City of Johns Creek, Georgia, et al.*
*Superior Court of Fulton County, Georgia*
*Civil Action File No. 2013-CV-237994*

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the foregoing **Amended Petition** by electronic mail and first class mail in the properly addressed envelope with adequate postage affixed thereto, as follows:

| | |
|---|---|
| Dana K. Maine<br>FREEMAN MATHIS & GARY, LLP<br>100 Galleria Parkway, Suite 1600<br>Atlanta, Georgia 30339-5948<br>Email: dmaine@fmglaw.com | Scott T. Hastey<br>RILEY MCLENDON, LLC<br>315 Washington Avenue<br>Marietta, Georgia 30060<br>Email: shastey@RileyMcLendon.com |

This the 9th day of March, 2015.

_____
AARON M. KAPPLER
Georgia Bar No. 272533
WILLIAM J. SHAUGHNESSY
Georgia Bar No. 118174

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Norcross, Georgia 30092
770-925-0111; fax 770-925-8597
Attorneys for Plaintiff EJC6, LLC

1428344_1

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| EJC6, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | FILE NO. 2013-CV-237994 |
| CITY OF JOHNS CREEK, GEORGIA, and | § | |
| JOHNS CREEK CITY COUNCIL, by and | § | |
| through its Members, RANDALL JOHNSON, | § | |
| BRAD RAFFENSPERGER, KAREN | § | |
| RICHARDSON, IVAN FIGUEROA, KELLY | § | |
| STEWART, and the Honorable MIKE | § | |
| BODKER, | § | |
| | § | |
| Defendants. | § | |

## DEMAND FOR JURY TRIAL

COMES NOW, EJC6, LLC, the Plaintiff herein, by and through its undersigned counsel of record, and submits its demand for trial by jury.

Respectfully submitted this 9th day of March, 2015.

AARON M. KAPPLER
Georgia State Bar No. 272533

Thompson, O'Brien, Kemp & Nasuti, P.C.
40 Technology Parkway South, Suite 300
Norcross, Georgia 30092
770-925-0111; fax 770-925-8597

1

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the foregoing **Demand for Jury Trial** by electronic mail and first class mail in the properly addressed envelope with adequate postage affixed thereto, as follows:

| | |
|---|---|
| Dana K. Maine | Scott T. Hastey |
| FREEMAN MATHIS & GARY, LLP | RILEY MCLENDON, LLC |
| 100 Galleria Parkway, Suite 1600 | 315 Washington Avenue |
| Atlanta, Georgia 30339-5948 | Marietta, Georgia 30060 |
| Email: dmaine@fmglaw.com | Email: shastey@RileyMcLendon.com |

This the 9th day of March, 2015.

AARON M. KAPPLER
Georgia Bar No. 272533
WILLIAM J. SHAUGHNESSY
Georgia Bar No. 118174

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Norcross, Georgia 30092
770-925-0111; fax 770-925-8597
Attorneys for Plaintiff EJC6, LLC

1433334_1

2